Charles H. FOSTER et al., Appellants,

v.

Dennis S. WAGNER, Appellee.

No. 5392.

Court of Civil Appeals of Texas.

El Paso.

March 15, 1961.

Rehearing Denied March 22, 1961.

Mayfield, Broaddus & Goodman, El Paso, for appellants.

Edwards, Belk, Hunter & Kerr, El Paso, for appellee.

LANGDON, Chief Justice.

This cause has previously been before this court. Since the essential facts of the case are fully set out in our original opinion, which is reported in 337 S.W.2d 485, there exists no necessity for again reciting them here.

On application for writ of error the Supreme Court, by reason of our specific mention of only the first five points urged by appellants, and our failure to specifically pass upon their remaining twenty-four points, concluded that our former decision must have rested solely upon fundamental error which was the basis of appellants' first five points.

In the opinion by the Supreme Court reversing this cause, reported in 341 S.W.2d 887, 892, the court held that there was no predicate for appellants' (first five) points and, therefore, there was no basis upon which such points could have been considered and sustained by the Court of Civil Appeals—"unless they were considered by that court to present fundamental error." It was held that none of the questions raised by such points fell within that narrow field which, in opinions by the Supreme Court, has been delineated as fundamental error. Thus, our former opinion, presumably resting on fundamental error, was held to be in conflict with other opinions by the Supreme Court. The judgment of this court was therefore reversed, and this case remanded to us·for consideration of such points of error in appellants' brief as may be predicated upon proper assignments of error in their motion for new trial, or in their motion for judgment non obstante veredicto, or as may constitute fundamental error under decisions cited by the Supreme Court in its decision reversing this court.

In our original opinion, we pointed out that appellants' appeal was predicated upon twenty-nine ·points of error and, without discussing each of the twenty-nine points, we said we believed the principal question raised by the appeal involved the. legal construction of the listing agreement which was the basis of the suit.

In view of the importance of the listing agreement to a proper understanding and disposition of this case, it is (omitting only formal parts thereof), set out in full below:

"On May 7, 1954, C. H. Leavell and D. R. Ponder obtained an option to purchase

"All of Tract 4A, in Block 1 of the Ascarate Grant in El Paso County, Texas, according to the Resurvey thereof made by El Paso County for tax purposes, containing 1158.76 acres, more or less,

and in consideration of Dennis S. Wagner negotiating such option contract the said Leavell and Ponder agreed in writing on the same date that in the event they should hereafter construct any dwellings on any part of said land then the said Dennis S. Wagner shall be their exclusive sales agent at a commission of 3½% of the gross sale price of all dwellings selling for less than $10,000.00 and 4% on all dwellings selling for $10,000.00 or more, and Leavell and Ponder agreed that in the event any of the land is sold to a builder or builders to construct dwellings thereon then such sales shall be conditioned that Dennis S. Wagner shall be the exclusive sales agent for such builder. Said agreement provides that if the said Dennis S. Wagner is unable to secure a buyer after 60 days after any dwelling has been completed then Leavell and Ponder, or such builder or builders as the case may be, shall have the right to list such unsold dwelling or dwellings with another real estate agent or agents, together with the said Dennis S. Wagner, and in such event whichever agent makes the sale shall be entitled to the commission.

"The option on Tract 4A, Block 1, Ascarate Grant, has been assigned to Texas Homes, a corporation, and Texas Homes has this date entered into a contract with C. H. Foster granting him an option to purchase 70 acres of land for housing development, such option to be exercised within one year from date thereof. In consideration of C. H. Foster granting to Dennis S. Wagner the exclusive right to sell all of the houses constructed by him on said 70 acres, or any part thereof, and in addition the exclusive right to sell all houses constructed by C. H. Foster on the West 40 acres of Tract 1A, Block 2, of the Ascarate Grant, which 40 acres the said C. H. Foster also holds under option to purchase, the said Dennis S. Wagner agrees that the commission on the gross sale of each house shall be 3% instead of the 4% provided in said listing agreement with Ponder and Leavell and Dennis S. Wagner hereby releases the 70 acres from his original listing agreement with Ponder and Leavell. This release, however, shall not be effective unless and until C. H. Foster exercises the option to purchase said 70 acres, or if he purchases only a portion of same then the release shall apply only to the portion on which C. H. Foster actually exercises his option.

"As between C. H. Foster and Dennis S. Wagner it is agreed as follows:

"I.

"Dennis S. Wagner agrees to use diligence in securing purchasers for each and every residence erected by C. H. Foster or his assignee at such price and on such terms as C. H. Foster may place thereon, and Dennis S. Wagner agrees to pay for all advertising and promotional expenses.

"II.

"Dennis S. Wagner shall be paid a commission of three per cent (3%) of the gross sale price of each and every residence when the sale of such residence is closed. Said commission shall be payable even though such residence is sold by another agent or is sold direct by the builder.

"III.

"If Dennis S. Wagner is unable to secure a buyer within sixty days after

any dwelling has been completed, the completion date to be the date of FHA Final Inspection, then Foster shall have the right to list such unsold dwelling, or dwellings with another real estate agent, together with the said Dennis S. Wagner and in such event whichever agent makes the sale will be entitled to the commission.

### "IV.

"If Foster does not exercise the option to purchase any portion of said 40 acres or of the 70 acres, then as to the land not purchased this agreement shall be of no force or effect.

### "V.

"If Foster exercises the option on all or any part of the land covered by this agreement and thereafter if such land, or any part thereof, is conveyed to another person or corporation then the terms of this agreement shall be binding upon such subsequent owner as to the land so conveyed.

"Executed this 13th day of October, A.D. 1956.

"/s/ Charles H. Foster
"/s/ Dennis S. Wagner"

The suit was for damages for breach, and for conspiracy to induce a breach of contract to pay commissions to a real estate broker. It was not a suit for real estate commissions.

The case was tried to a jury and was submitted on special issues. The first two special issues, and the answers found thereto by the jury, are set out below:

### "Question No. 1.

"What sum of money, if any, do you find from a preponderance of the evidence, if paid in cash now would reasonably compensate Plaintiff Dennis S. Wagner for the loss, if any, sustained by him when, by deed dated May 5, 1958, Defendant Newster Company, Inc. conveyed the land to Defendant Dautrich Real Estate Company without binding it to pay Plaintiff Wagner commissions?

"Answer: Answer by stating an amount if any.

"We Answer: $4,000

### "Question No. 2.

"Do you find from a preponderance of the evidence that any of the Defendants having knowledge of the contract between Plaintiff Wagner and Defendant Foster participated in a conspiracy, as that term has been defined, with any of the other Defendants to induce Defendant Newster Company, Inc. to convey to Defendant Dautrich Real Estate Company the land covered by the deed dated the 5th day of May, 1958, without binding it to pay Plaintiff Wagner commissions?

"Answer: 'Yes' or 'No.'

"We answer: Yes."

A contract is a promise or set of promises, for the breach of which the law gives a remedy, or the performance of which the law recognizes as a duty. Failure to do or to perform an act or thing neither expressly or impliedly promised, does not, in law, constitute a breach of contract.

In order to determine whether a breach of contract did or did not occur "when by deed dated May 5, 1958, Defendant Newster Company, Inc. conveyed the land to Dautrich Real Estate Company without binding it to pay Wagner commissions", we must first ascertain, from the contract itself, whether a duty was imposed upon the defendant not to convey the land to another person or corporation without binding such person or corporation to pay commissions to Wagner.

From the manner in which the first two special issues were submitted, it is not clear whether the trial court considered that the contract was breached merely by virtue of the fact that the remaining lots were conveyed to a person or corporation who was not a "builder", or whether it was due to defendants' failure to bind such "subsequent owner" to pay Wagner commissions, or because the conveyance of such remaining lots made further performance of the contract on the part of the defendants, Foster and Newster Company, Inc., impossible.

In any event, the trial court, by its submission of Special Issue No. 1 and Special Issue No. 2, assumed, either as a matter of law or as an undisputed fact, that the contract was breached when defendant Newster Company conveyed the land to Dautrich Real Estate Company without binding it to pay commissions to Wagner. No issue was submitted to the jury inquiring whether there was, in fact, a breach of contract. The effect of the issues amounted to an instruction by the court that there was a breach of the contract, and asked the jury to find the amount of damages occasioned thereby, and to determine whether defendant Foster had participated in a conspiracy with any of the other defendants to induce such breach.

Appellants' Points Nos. 6 and 7 are complaints by which it is contended that the trial court erred in finding or holding, as a matter of law, that the conveyance by Newster Company, Inc. to Dautrich Real Estate Company, without binding it to pay commissions to Wagner, constituted a breach of the listing. Appellants' contentions are based on the ground that no such duty was imposed on defendant by the listing, and that the evidence was insufficient to support such finding.

In appellants' motion for judgment non obstante veredicto, it was contended that, since the contract was conditioned upon the erection of an undetermined number of houses by Foster or his assignee, and since,

under the undisputed evidence, Foster reasonably complied with the duties imposed upon him in the completion of those houses which he did complete, the contract was terminated by its terms and no breach occurred by reason of the disposition of the remaining lots (upon which neither Foster nor the Newster Company had erected any houses). Further, if paragraph 5 of the listing was an attempt to impose an obligation upon the defendant Foster, rather than upon the land (as a covenant running with the land), then the terms of the contract were wholly complied with by defendant Foster in exercising the option and binding the "subsequent owner"—to wit, Newster Company, Inc.—who admittedly complied with all of its obligations under the contract.

Again on the motion for new trial, appellants urged the court to set aside the verdict of the jury and any judgment that might have been entered thereon, on the ground that the court's charge (improperly) assumes a breach of the contract, and fails to submit to the jury any fact question as to whether or not said contract was, in fact, breached. Appellants had previously objected, in their written objections and exceptions, to the court's charge (particularly to Special Issue No. 1 thereof), on the ground that such issue improperly assumes that the conveyance of the land by defendant (Newster Company, Inc.) to Dautrich Real Estate Company, without binding it to pay commissions to Wagner, constituted a breach of contract; that such special issue (as framed) constituted a comment on the weight of the evidence and a conclusion prejudicial to the rights of defendants; that it constituted an attempt to change the written terms of the contract and to impose a burden on defendant to so act, contrary to the terms of the written contract; and that the question of whether said contract had been breached was a question of fact for the jury. Requested special issues, submitted by appellants on the issue of breach of contract, were refused by the court.

■ We believe appellants have sufficiently complied with the rules to preserve for appellate consideration their points numbers 6 and 7. The rules require only that the point of objection be referred to "in such way" that it may be clearly identified and understood by the court (Rule 321, Texas Rules of Civil Procedure). It was incumbent upon plaintiff Wagner to allege and prove, as a part of his cause of action against defendants, that the listing contract had, in fact, been breached. In many ways throughout the trial, appellants brought to the attention of the court their contention that plaintiff had wholly failed to meet the burden imposed upon him to plead and prove that the listing agreement had been breached, and they denied that the contract had been breached. They did this by exceptions to plaintiff's pleadings, by motion for instructed verdict, by objection to the court's charge, by requested special issues, by motion for judgment non obstante veredicto, and by motion for new trial. In the light of this record, we believe the grounds urged by appellants in support of their motion for new trial were sufficient to present their particular point of objection in such way that it could be clearly identified and understood by the trial court, and that such assignments were not so general as to require this court to disregard the points predicated thereon (Points 6 and 7), by reason of the requirements of Rules 320, 321, 322, 374 and 418, Texas Rules of Civil Procedure.

Plaintiff contends in his brief that the language of the listing "required Foster either to keep the property for his own development and remain liable for the payment of Wagner's commissions himself or sell the property to some other builder, conditioning the sale in such a way as to protect Wagner on his commissions * * *."

Neither party to this suit plead or contended that the contract was ambiguous. Each side contended that the contract meant exactly what it said, but the parties differed in their conclusions as to the meaning of what was actually said.

Careful examination of the contract reveals: (1), that it contains no provision expressly providing for the term or duration of the contract; (2), it does not expressly bind the defendant Foster to build any houses on the land; (3), assuming that there is an implied promise on the part of Foster to build houses on said land, there is no express promise to build any particular number of houses thereon; (4), defendant Foster's obligation to pay commissions to Wagner is limited to the sale of "dwellings" or "residences" that might be erected on said land by Foster or his assignee, at such price and on such terms as C. E. Foster may place thereon * * *"; (5), the contract does not expressly forbid the sale of the remaining land upon which no houses or dwellings were constructed, and no provision for the payment of a commission thereon is provided in the contract; (6), paragraph V of the contract states, " * * * if such land, or any part thereof, is conveyed to another person or corporation then the terms of this agreement shall be binding upon such subsequent owner as to the land so conveyed." Such provision does not, however, expressly bind defendant Foster or his assignee (Newster Company, Inc.) to bind such subsequent owner, and even if such a duty or obligation to bind the subsequent owner to the terms of the agreement might properly be implied, the details and manner in which this act should be accomplished are entirely lacking.

■ The Supreme Court of Texas, in the case of Blasser v. Cass, 158 Tex. 560, 314 S.W.2d 807, 809, in passing upon a similar question, involving a promise by the owner of land made to a real estate dealer, to the effect that successive owners of such land would be bound by the terms of such personal covenant to pay such agent the real estate commissions due or to become due thereunder, held:

"This type of promise, being purely for the benefit of one having no interest in the land, will not be enforced against successive owners of real prop-

erty as a covenant running with the land."

It is also elementary, we believe, that there can be no complete agreement or promise by the seller of land without a counterpart by the broker, and nowhere does the listing agreement impose a counter-obligation on the part of plaintiff Wagner to do anything, even in the event Dautrich Real Estate Company, as the subsequent owner of the land, had agreed in writing to be bound by the terms of the personal agreement between Foster and Wagner.

■ If the personal agreement between Foster and Wagner, expressly or impliedly, imposed a duty upon the defendant Foster to bind the subsequent owner of the land to pay commissions to Wagner, such agreement must necessarily come within the purview of Article 6573a, Vernon's Annotated Texas Civil Statutes—The Real Estate License Act—which comprehensively designates activities that result in a person's being classified as a real estate broker when he acts for another for compensation, or with the intention or expectation or on the promise of receiving or collecting compensation. One of the express requirements of the statute is that the promise or agreement to pay a commission must be signed by the party to be charged, and we believe the Texas cases are in accord that the essential parts of the agreement, or the promise, must be in the signed writing.

In the case of Watson v. Brazelton, Tex. Civ.App., 176 S.W.2d 216, it was held that the promise or agreement must also show with whom the agreement, or to whom the promise, was made. In order for such a contract to be enforceable, there must be some mutuality of agreement, and unless Wagner also agreed to be bound by the terms of such contract, we do not believe he could be required to act as agent for another, in such case, even though the terms of the contract obtained from the subsequent owner be identical with the terms of his previous agreement with defendant Foster.

■ Implied covenants are not favored, and courts will not lightly imply additional covenants enlarging the terms of the contract. Palm v. Mortgage Investment Co., Tex.Civ.App., 229 S.W.2d 869 (no wr. hist.); Stern v. Dunlap Company, 10 Cir., 228 F.2d 939; Danciger Oil & Refining Co. of Texas v. Powell, 137 Tex. 484, 154 S.W. 2d 632, 635, 137 A.L.R. 408.

In Danciger Oil & Refining Co. of Texas v. Powell (supra), the court said:

"An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and, therefore omitted to do so, or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument."

■ If the intent of the parties, by the provisions of paragraph V of the contract, was to create a covenant running with the land, we do not believe that the failure of such covenant to so operate would impose an alternate, or further, unexpressed obligation upon the defendant to otherwise bind subsequent owners of the land to the terms of the personal agreement to pay commissions.

■■ If paragraph V of the listing was not intended by the parties to create a covenant running with the land, but was intended as a promise or agreement on the part of the defendant Foster, in the event he thereafter conveyed the land or any part thereof to another person or corporation, to bind such subsequent owner to the terms of his agreement with Wagner, then it was, in our opinion, a promise to make a future contract. To be enforceable, an agreement to make a contract in the future must be specific as to all essential terms, and no terms of the proposed agreement may be

left to future negotiations. In other words, the parties to such an agreement must presently assent to all of its essential terms and intend at the present time to be bound by the agreement. Where this is not the case, the agreement will be deemed nugatory. The future agreement was one which presumably would require the defendant to make a contract with some third party at some future date, for the benefit of plaintiff, who might or might not, assent either to the terms of the agreement or agree to contract with such third party. Contracts of this nature have been condemned by the Supreme Court. Stekoll Petroleum Co. v. Hamilton, 152 Tex. 182, 255 S.W.2d 187 (and cases cited therein).

█ The contract contained no express provision which required defendant Foster to keep the land for his own development and remain liable for plaintiff Wagner's commission, nor do we think such additional obligation could be implied merely because paragraph V of the contract was unenforceable as a covenant running with the land; assuming, as we do, that such contract imposed no affirmative duty upon the defendant Foster to bind subsequent owners of the land to the terms of his personal agreement with the plaintiff Wagner.

Since we are of the opinion that the terms of the contract were not such as would authorize the trial court in holding, as a matter of law, that the contract was breached "when defendant Newster Company, Inc. conveyed the land to Dautrich Real Estate Company without binding it to pay commissions to Wagner", it follows, that we believe the trial court erred in so holding, and we therefore sustain appellants' Points Nos. 6 and 7.

If the breach of contract alleged by plaintiff was not such a breach as would authorize the trial court to hold, as a matter of law, that the contract was in fact breached; and since no breach of contract was established as a matter of law, or found by the jury, other findings by the jury on the issue of actual damages for such breach, ex-

emplary damages and conspiracy, become immaterial, and are insufficient to support the judgment of the trial court.

We have considered all other points raised by appellants, and we are of the opinion that they should be overruled. Our holding on the two points sustained, however, require a reversal of this case, and we must either remand, or here render judgment for appellants. Whether this case should be remanded or here rendered for appellants depends upon the question of whether the listing agreement sued on was legally sufficient to support the cause of action alleged by plaintiff, and to satisfy the requirements of The Real Estate License Act (Article 6573a, supra). We refrain, however, from specifically passing on this matter, since the question was not properly preserved for appellate review.

The cause is accordingly reversed and remanded to the court below.